Filed 8/16/23  P. v. Ayala CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C096943 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FER-2022-1437) |
| v. | |
| BENJAMIN ZAPATA AYALA, | |
| Defendant and Appellant. | |

Defendant Benjamin Zapata Ayala was separately charged for two instances of evading a peace officer with wanton disregard for the safety of others.  The trial court subsequently consolidated the separate cases for a single trial.  The jury found defendant guilty on both counts and the court imposed a sentence of two years eight months.  On appeal, defendant argues that joinder of the offenses was improper.  Finding no error, we will affirm.

BACKGROUND

On January 31, 2022, Lodi Police Sergeant Elias Ambriz responded to a call regarding a theft from a Lowe's store.  The store's loss prevention officer directed

1

Sergeant Ambriz to the suspected thief's vehicle, a red Mazda. Sergeant Ambriz located the car and observed a man closing the "hatchback" or "back area" of the Mazda. At both the preliminary hearing and trial, Sergeant Ambriz testified he got a good look at this person and identified him in court as defendant. After defendant got into the driver's seat, Sergeant Ambriz told him to put his hands up. Defendant initially did so but when Sergeant Ambriz repositioned his patrol car, defendant drove off. Sergeant Ambriz turned on the patrol car's sirens and pursued defendant, who drove at approximately twice the speed limit and ran multiple stop signs and a traffic light. Law enforcement halted their pursuit once they lost sight of defendant.

Eight days later, on February 8, 2022, Deputy Sheriff Christopher Rafferty spotted a red Mazda on the highway emitting smoke from its engine compartment. The Mazda's license plate matched the plate of the red Mazda involved in the January 31, 2022 pursuit. At both the preliminary hearing and trial, Deputy Rafferty identified defendant as the Mazda's driver. Deputy Rafferty turned on his patrol car's emergency lights and sirens to initiate a traffic stop. Defendant failed to yield and ultimately sped up. As Deputy Rafferty pursued, defendant drove into oncoming traffic and ran five traffic lights. For safety purposes, the pursuit was terminated. From where he stopped his patrol car, Deputy Rafferty observed defendant pull over, exit the Mazda, and run away. Defendant was ultimately found hiding in a backyard doghouse and taken into custody.

For each incident, defendant was charged in separate cases with evading a peace officer with wanton disregard for the safety of others. (Veh. Code, § 2800.2, subd. (a).) At the preliminary hearings in these cases, Sergeant Ambriz and Deputy Rafferty testified to their version of events. The prosecution subsequently moved to consolidate the cases, which defendant opposed. The trial court granted the prosecution's motion and consolidated the cases for trial.

At trial, the Lowe's loss prevention officer from the January 31, 2022 incident, Jesus Gonzales, testified that the suspected thief was wearing a ski mask initially but that

he got a "glimpse" of the suspect's uncovered face for about one second while the suspect was driving away.  Gonzales further testified that he reviewed a photo lineup of six individuals after the incident.  On one of those photos, Gonzales wrote, "No," indicating it was not the person he saw on January 31, 2022.

The jury ultimately found defendant guilty of both counts of evading a peace officer.  At the sentencing hearing, the trial court imposed a total sentence of two years eight months, comprised of the middle term of two years for the February 8, 2022 evading charge and one-third of the middle term, which is eight months, for the January 31, 2022 evading charge.

DISCUSSION

Defendant's sole contention is that the trial court abused its discretion by consolidating the charges for a single trial.  Defendant concedes the charged offenses met the statutory requirements for joinder because they were "of the same class."  But he maintains that the court erred by not holding separate trials because:  (1) evidence of the different offenses would not be cross-admissible at separate trials; (2) being tried for two offenses would inflame the jury; and (3) consolidation prejudicially merged a weak case and a strong case.  We disagree.

A.      *Applicable legal principles*

Penal Code section 954[1] permits the joinder of "two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses."  Because joinder ordinarily promotes efficiency, it is "the course of action preferred by the law."  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220.)  Nonetheless, even where joinder is authorized by section 954, the court, "in the interests of justice and for good cause shown, may in its discretion order that the different

---

[1]      Undesignated statutory references are to the Penal Code.

offenses or counts set forth in the accusatory pleading be tried separately." (§ 954.) When exercising its discretion in this regard, "the court weighs 'the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.' " (*People v. Merriman* (2014) 60 Cal.4th 1, 37.) "To succeed on a claim that the trial court abused its discretion in denying severance or ordering consolidation, the defendant must make a ' "clear showing of prejudice" ' and establish that the ruling fell ' " ' " 'outside the bounds of reason.' " ' " ' " (*Ibid.*)

The framework for analyzing prejudice in this context is well established. " 'Cross-admissibility is the crucial factor affecting prejudice. [Citation.] If evidence of one crime would be admissible in a separate trial of the other crime, prejudice is usually dispelled.' [Citation.] 'If we determine that evidence underlying properly joined charges would not be cross-admissible, we proceed to consider "whether the benefits of joinder were sufficiently substantial to outweigh the possible 'spill-over' effect of the 'other-crimes' evidence on the jury in its consideration of the evidence of defendant's guilt of each set of offenses." ' " (*People v. Jackson* (2016) 1 Cal.5th 269, 299, italics omitted.) The three factors most relevant to this latter assessment are: " '(1) whether some of the charges are particularly likely to inflame the jury against the defendant; (2) whether a weak case has been joined with a strong case or another weak case so that the totality of the evidence may alter the outcome as to some or all of the charges; or (3) whether one of the charges (but not another) is a capital offense. . . . ' " (*Ibid.*)

When reviewing the trial court's decision to consolidate, we consider only "the facts known by the trial court at the time of the court's ruling." (*People v. Merriman, supra*, 60 Cal.4th at p. 37.) If a reviewing court determines that no abuse of discretion occurred in the joinder of the charges, that court then asks if the defendant has shown that the resulting trial involved "gross unfairness" amounting to a violation of due process. (*People v. Ybarra* (2016) 245 Cal.App.4th 1420, 1434 (*Ybarra*).) "In determining

4

whether there was such gross unfairness, we view the case as it was tried, including a review of the evidence actually introduced in the trial." (*Ibid*.)

B.       *Abuse of discretion*

As to his claim of abuse of discretion, defendant first argues there would be no cross-admissibility of the evidence in hypothetical separate trials. The People contend the two chases would have been cross-admissible to prove intent. The People have the better argument.

Evidence of criminal acts other than the offense being adjudicated—commonly referred to as "other crimes" evidence—is ordinarily not admissible to prove a predisposition to commit such conduct on a particular occasion. (Evid. Code, § 1101, subd. (a).) However, such evidence is admissible when relevant to prove some fact other than the propensity to commit that act, such as motive, plan, identity, intent, or absence of mistake or accident. (Evid. Code, § 1101, subd. (b).) The relevance of other crimes evidence "depends, in part, on whether the act is sufficiently similar to the current charges to support a rational inference of intent, common design, identity, or other material fact." (*People v. Leon* (2015) 61 Cal.4th 569, 598.) "[T]he degree of similarity required for cross-admissibility ranges along a continuum, depending on the purpose for which the evidence is received. The least degree of similarity is required to prove intent." (*People v. Scott* (2011) 52 Cal.4th 452, 470.) The other criminal act need only be sufficiently similar to the charged offense " 'to support the inference that the defendant " 'probably harbor[ed] the same intent in each instance.' " ' " (*Alcala v. Superior Court, supra*, 43 Cal.4th at pp. 1222-1223; see also *Scott, supra*, at p. 471.)

Here, the prosecution was required to prove for each offense that defendant intended to evade the peace officer. (See CALCRIM No. 2181.) And the two chases, occurring eight days apart, were highly similar. In both instances, after officers attempted to initiate a stop, defendant sped away, ignoring the patrol cars' sirens and committing numerous traffic violations. This degree of similarity is more than sufficient

5

to support the inference that defendant harbored the same intent to evade in each chase. Accordingly, each chase would be cross-admissible for the purpose of proving intent.

None of the other prejudice factors point to an abuse of discretion in consolidating the cases. Neither charge was a capital offense, and, as the charges were identical, neither was more likely to unduly inflame the jury against defendant. (Cf. *People v. Soper* (2009) 45 Cal.4th 759, 780 (*Soper*) ["The homicides at issue . . . are similar in nature and equally egregious—hence neither, when compared to the other, was likely to unduly inflame a jury against defendant"].) As to the final factor, defendant submits that the joinder was prejudicial because the case for the January 31, 2022 offense was weaker than that for the February 8, 2022 offense. More specifically, defendant argues that the evidence of identity was weaker for the January 31, 2022 case because: (1) the culprit was not caught at the end of that chase, and (2) the eyewitness Gonzales wrote "No" on the photo of defendant during the photo lineup.

Defendant's reliance on Gonzales's photo identification is misplaced for two reasons. First, this information was not available to the trial court when it considered the motion to consolidate. Defendant's opposition brief below makes no mention of Gonzales or this photo, and defendant relies solely on Gonzales's trial testimony in raising this argument now. Second, there is no evidence in the appellate record that the photo on which Gonzales indicated "No" is, in fact, a photo of defendant. Defendant only points to trial counsel's representation during summation that this photo was a "picture of Mr. Ayala." But statements made during closing argument are not evidence. (Evid. Code, § 140; *In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11.)

What remains is defendant's argument that the evidence of identity was weaker for the January 31, 2022 chase because the culprit was not apprehended at the scene. We are not persuaded that such an evidentiary imbalance prejudiced defendant. The "salient point" here is that the proffered evidence in both cases was sufficiently strong at the time the consolidation motion was granted. (See *Soper, supra*, 45 Cal.4th at p. 781.) Sergeant

6

Ambriz and Deputy Rafferty each identified defendant as the offender at the preliminary hearings. And regardless, "as between any two charges, it always is possible to point to individual aspects of one case and argue that one is stronger than the other. A mere imbalance in the evidence, however, will not indicate a risk of prejudicial 'spillover effect,' militating against the benefits of joinder and warranting severance of properly joined charges." (*Ibid.*; see also *Ybarra, supra*, 245 Cal.App.4th at p. 1436 ["There must be an 'extreme disparity' in the strength of the evidence"].) Trying the charges jointly thus did not unfairly merge weak and strong cases.

Against any showing of prejudice, we consider the countervailing benefits of joinder. Joinder results in significant systemic efficiencies, which include " 'a single courtroom, judge, and court attach[és].' " (*Soper, supra*, 45 Cal.4th at p. 772.) " 'Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried. In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process.' " (*Ibid.*) Weighing the state's interests in these economies against the low risk of a prejudicial spillover effect, we conclude the cases were properly joined.

C.     *Due process*

As noted earlier, our inquiry does not end there. Our Supreme Court has held that even if a trial court's pretrial decision to consolidate " 'is correct at the time it was made, a reviewing court still must determine whether, in the end, the joinder of counts . . . for trial resulted in gross unfairness depriving the defendant of due process of law.' " (*Soper, supra*, 45 Cal.4th at p. 783.) "Whether joinder worked a gross unfairness turns upon assessing whether it was 'reasonably probable that the jury was influenced by the joinder in its verdict of guilt.' " (*People v. Vargas* (2020) 9 Cal.5th 793, 819.) A defendant bears the " 'high burden' " of establishing gross unfairness amounting to a due process violation. (*Ybarra, supra*, 245 Cal.App.4th at p. 1438.)

7

Defendant does not argue that joinder resulted in gross unfairness or violated his due process rights. But even if he had, we would reject the claim. Based on the evidence presented and arguments raised at trial, we remain unpersuaded that any disparity in strength between the two cases prejudiced defendant. Even assuming the photo marked "No" by Gonzales is of defendant, Gonzales explained he only caught a one-second glimpse of the thief with his ski mask off while the thief was driving away. In contrast, Sergeant Ambriz testified at trial that he got a clear look at defendant while interacting with him before the pursuit began. The mere fact that identity was more vigorously disputed for the January 31, 2022 offense does not render it a weak case. Nor does any slight difference in strength between the joined cases amount to a due process violation. Further, "[a]ppellate courts have found ' "no prejudicial effect from joinder when the evidence of each crime is simple and distinct," ' " as was the case here. (*Soper, supra*, 45 Cal.4th at p. 784.) Defendant has failed to show that joinder actually resulted in gross unfairness amounting to a denial of his constitutional right to a fair trial or due process of law.

## DISPOSITION

The judgment is affirmed.

        KRAUSE        , J.

We concur:

   RENNER        , Acting P. J.

   BOULWARE EURIE  , J.

8